UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RUBEN RODRIGUEZ, | § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. SA-16-CV-765-XR |
| ENCANA OIL & GAS (USA) INC; AND HELMERICH & PAYNE INTERNATIONAL DRILLING COMPANY, | § § § § § § | |
| *Defendants*. | § | |

# ORDER

On this date, the Court considered the status of the above-captioned case. After careful consideration, the Court hereby DENIES Plaintiff's Motion for Reconsideration (docket no. 62), DENIES Plaintiff's Motion for Leave to Amend Plaintiff's First Amended Complaint (docket no. 63), and GRANTS Defendant's Motion for Summary Judgment (docket no. 59).

## BACKGROUND

**I.  Factual Background**

Plaintiff Ruben Rodriguez filed his First Complaint with this Court on September 27, 2016, and named Encana Oil & Gas (USA) Inc. ("Encana") as Defendant. Docket no. 1. On August 28, 2017, Plaintiff filed a Motion for Leave to File First Amended Complaint to join Helmerich & Payne International Drilling Company ("H&P") as a co-Defendant. Docket no. 36. On October 11, 2017, the Court granted Plaintiff's motion, Docket no. 48, and Plaintiff's live Amended Complaint was entered on the same date. Docket no. 49. Plaintiff brings claims for negligence and breach of contract against Encana and breach of contract against H&P. *Id.* On

1

November 8, 2017, the Court granted H&P's motion to dismiss Plaintiff's breach of contract claim for failure to state a claim. Docket no. 54.

Plaintiff alleges that on February 7, 2013, H&P entered into a "day work" contract for the purposes of drilling and completing an oil well in Karnes County, Texas, and that H&P was to be the contractor. Docket no. 49 at 4. Plaintiff states that pursuant to that contract between Plains Exploration ("Plains") and H&P, H&P assumed certain responsibilities, including providing proper and well-maintained equipment, ensuring all operations are conducted in a safe manner, and promptly correcting and reporting all known or suspected hazards or unsafe conditions. *Id.* Plaintiff states that Plains assigned its interest in the contract to Encana on May 28, 2014. *Id.*

The "day work" contract states, in relevant part:

IN CONSIDERATION of the mutual promises, conditions and agreements herein contained and the specifications and special provisions set forth in Exhibit "A", Attachments (1) and (2) to Exhibit "A", Exhibit "A-1", Exhibit B, and Appendix E, and Exhibit "B" attached hereto and made a part hereof (the "Contract"), [Encana] engages [H&P] as an independent contractor to drill the hereinafter designated well or wells in search of oil or gas on a Daywork Basis.

For purposes hereof, the term "Daywork" or "Daywork Basis" means [H&P] shall furnish equipment, labor, and perform services as herein provided, for a specified sum per day under the direction, supervision and control of [Encana] (inclusive of any employee, agent, consultant or subcontractor engaged by [Encana] to direct drilling operations). When operating on a Daywork Basis, [H&P] shall be fully paid at the applicable rates of payment and assumes only the obligations and liabilities stated herein. Except for such obligations and liabilities specifically assumed by [H&P], [Encana] shall be solely responsible and assumes liability for all consequences of operations by both parties while on a Daywork Basis, including results and all other risks or liabilities incurred in or incident to such operations.

Docket 59-3 at 1.

Plaintiff states that his employer, Frank's International ("Frank's"), entered into a separate contract with Encana. Docket no. 49 at 7. This contract was "to provide casing well

services" at the oil well site, and Plaintiff alleges that Encana "had an absolute duty to direct, supervise and control any subcontractor which was engaged by the operator." *Id.*

On August 26, 2014, Plaintiff was employed by Frank's and was allegedly injured at work after he took off a protector from the casing and was caught by the pipe wrangler and vee-door pole. *Id.* at 3. Plaintiff allegedly suffered injuries to his left shoulder, left wrist, lower abdomen, and right calve. *Id.*

Plaintiff alleges it was determined that on August 26, 2014, the H&P motorman of the rig took his lunch break and assigned another H&P employee to run the pipe wrangler, who was allegedly distracted and ran the pipe wrangler backward instead of forward. *Id.* at 3. Plaintiff alleges that the pipe wrangler was not properly functioning for a period of time, and the crew from Frank's informed both Encana and H&P. *Id.* Plaintiff states that Frank's crew was told that the cost to repair was prohibitive and that they were to continue working. *Id.* Plaintiff alleges that, because of Encana and H&P's actions, he was severely injured and suffered permanent damage to his left shoulder, left wrist, lower abdomen, and right calve. *Id.*

Plaintiff alleges the pipe wrangler is the exclusive design of H&P and was broken for a substantial length of time. *Id.* at 5. Plaintiff states that when he and his crew pointed this fact out to Defendant's employees, they were ridiculed and called "cry baby's." *Id.* Plaintiff alleges Defendant stated that to fix the pipe wrangler would require them to shut down the job for an undetermined length of time, leading to a loss of $28,000 daily, and Defendant continued the job despite having actual knowledge that the pipe wrangler was not functioning properly. *Id.*

Plaintiff alleges Encana is negligent by failing to correct an obviously dangerous condition, properly supervise its subcontractors, and shut down the job after becoming aware that the pipe wrangler was in a defective condition and was highly dangerous. *Id.* at 6. Plaintiff

3

further alleges that Encana breached the "day work" contract by failing to properly supervise H&P employees and failing to stop work after it knew the pipe wrangler was not functioning properly and presented a danger to all employees. *Id.* at 6–7.

Encana states that under the "day work" contract, H&P was hired as an independent contractor to drill the designated oil well and responsible for furnishing the specified drilling rig, as well as the five-man drilling crew. Docket no. 59 at 4. Encana states that H&P was responsible for "inspecting and maintaining the drilling rig's equipment and ensuring that its employees were qualified and trained to operate the equipment in a safe manner." *Id.* Because the pipe wrangler that allegedly caused Plaintiff's injury was a component of the drilling rig furnished by H&P, Encana states, H&P was contractually responsible for maintaining and safely operating it. *Id.*

Encana engaged Frank's as an independent contractor to run the casing into the oil well pursuant to a pre-existing master service agreement that was dated February 4, 2014 (the "MSA"). *Id.* The MSA states that Frank shall have "complete and sole control over [its] employees and the details of the [w]ork performed and the methods by which the [w]ork is accomplished." Docket no. 59-5 at 6.

Encana states that during operations on the oil well, it hired a consultant named Joseph Lane, who was present at the oil well site. Docket no. 59 at 4. Lane was referred to as the "company man," but Encana states he was employed by New Tech Engineering, not Encana, and his job was to confirm that H&P and Frank's complied with the drilling program and contractual commitments, particularly with respect to safety. *Id.* at 4–5. Encana alleges that Lane was not qualified to or allowed to touch or run the equipment at the site, and that he did not instruct any employees on the means or methods of accomplishing their work. *Id.* at 5. Rather, Encana states

4

that Frank's casing crew, which included Plaintiff, was directed by Victor Nava, a supervisor with nearly twenty years of oilfield experience. *Id.*

Before the casing operation began, Encana alleges that everyone at the site attended a safety meeting, at which Lane provided general information, but Nava provided specific safety instructions for the casing operation. *Id.* Encana alleges that at this meeting, no one stated any issue with the pipe wrangler. *Id.* After the meeting, however, an H&P employee allegedly told Frank's crew that the pipe wrangler was malfunctioning, but Lane was allegedly not present for the conversation and was unaware of any pipe wrangler malfunction. *Id.* at 5–6.

Encana states that when Plaintiff was operating the vee-door at the site, he worked with H&P's motorman. *Id.* at 6. When the motorman took a break, Encana states the floorhand assigned to replace him by H&P got distracted with conversation, pivoted the pipe wrangler up instead of down, and Plaintiff's shirt was apparently snagged by the pipe wrangler, which led to his injuries. *Id.* at 6–7. Encana states that Lane was in his office far away from the site and not present on the rig floor at this time. *Id.* at 7.

Encana states that H&P owned and operated the pipe wrangler that allegedly caused Plaintiff's injuries, but by the time Plaintiff was forced to concede this fact in 2017, the two-year statute of limitations had already run for Plaintiff to bring a negligence claim against H&P. *Id.* at 2. Plaintiff instead filed an amended complaint asserting a breach of contract claim against H&P. *Id.*

## II. Procedural Background

On October 10, 2017, H&P filed a Motion to Dismiss Plaintiff's breach of contract claim against it for failure to state a claim. Docket no. 46. On November 8, 2017, the Court granted

H&P's motion, finding that Plaintiff failed to sufficiently allege that he was an intended beneficiary of the "day work" contract to where he could enforce the contract. Docket no. 54.

On January 10, 2018, Encana filed its motion for summary judgment, seeking summary judgment on Plaintiff's breach of contract and negligence claims against it. Docket no. 59. On February 2, 2018, Plaintiff filed a Motion for Reconsideration and Motion for Leave to Amend Plaintiff's First Amended Complaint, stating that he neglected to allege that he was an intended beneficiary of the "day work" contract and asking the Court to grant leave to file an amended complaint and reallege the breach of contract claim against H&P. Docket nos. 62, 63. The Court will first resolve Plaintiff's motions for reconsideration and leave to amend, then resolve Encana's motion for summary judgment.

## DISCUSSION

### I. Plaintiff's Motions for Reconsideration and Leave to Amend

Plaintiff filed both a motion for reconsideration and leave to amend his amended complaint, but both motions center on Plaintiff's request to once again add H&P as a co-defendant and allege a claim for breach of contract.

Plaintiff seeks reconsideration of this Court's dismissal of Plaintiff's breach of contract claim against H&P. Plaintiff states that he neglected to allege that he was an intended beneficiary of the "day work" contract. A "court may relieve a party or its legal representative from a final judgment, order, or proceeding" for "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1). The determination of whether neglect is excusable is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). "[T]he court is to consider prejudice to the opposing party, length of the delay, and reason for the delay in

determining whether the claimant's neglect was excusable and the delay was made in good faith." *Silvercreek Mgmt., Inc., v. Banc of Am. Sec., LLC*, 534 F.3d 469, 472 (5th Cir. 2008). The district court does not have to rigorously apply each of these factors in every case. *Id.* Excusable neglect can encompass situations in which the failure to comply with a filing deadline is attributable to negligence. *Pioneer*, 507 U.S. at 394. The decision to grant or deny relief under Rule 60(b) is within the sound discretion of the district court. *Hernandez v. Thaler*, 630 F.3d 420, 428 (5th Cir. 2011).

Plaintiff fails to demonstrate sufficient excusable neglect for the Court to reconsider its dismissal of the breach of contract claim against H&P. Plaintiff does not ask the Court to reconsider its dismissal order because Plaintiff missed a deadline or was delayed in making an allegation. Instead, Plaintiff states he neglected to allege that he was an intended beneficiary of the "day work" contract. But Plaintiff alleged exactly that in his Amended Complaint, stating he "was a specific and intended beneficiary of that agreement." Docket no. 49 at 8. Further, granting Plaintiff's motion for reconsideration to restate a previously alleged statement, which the Court has already analyzed to then dismiss the related claim, will prejudice H&P, given that it has already litigated the very allegation Plaintiff seeks to restate. Plaintiff fails to convince the Court it should reconsider its order dismissing Plaintiff's breach of contract claim against H&P.

Plaintiff also seeks to amend his First Amended Complaint to reallege the breach of contract claim against H&P. Federal Rule of Civil Procedure 16(b) controls the amendment of pleadings once a scheduling order has been issued. A scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge." FED. R. CIV. P. 16(b). When the Court analyzes good cause under Rule 16, it should consider four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the

amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003); *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008). Whether the movant has good cause under Rule 16 is within the discretion of the trial court. *S & W Enters., LLC v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535–36 (5th Cir. 2003).

In the Third Amended Scheduling Order issued by the Court on August 24, 2017, the Court set the deadline of September 25, 2017, for Plaintiff to file a motion seeking leave to amend pleadings or join parties. Docket no. 34. Plaintiff filed his motion seeking leave to amend his First Amended Complaint on February 2, 2018. Docket no. 63.

Plaintiff has failed to show good cause for the Court to modify its scheduling order and allow Plaintiff to amend his complaint. In his motion, Plaintiff states that his "new allegations" that clarify his breach of contract claim against H&P are neither futile nor prejudicial to H&P. The Court disagrees. As H&P argues in its response, Plaintiff fails to cure the deficiency that the Court noted in its prior dismissal order that Plaintiff does not sufficiently allege he is an intended beneficiary of the "day work" contract. Although Plaintiff argues that providing well casing services are an integral part of the construction of a well, Plaintiff still fails to sufficiently allege that his employer's work, contemplated in a separate agreement from the "day work" contract, involved "directing drilling operations" such that the "day work" contract contemplated Plaintiff's employer as an intended beneficiary. The proposed amended complaint suffers from the same deficiencies as Plaintiff's live complaint. Plaintiff thus fails to demonstrate the importance of the amendment. Further, allowing such a futile amendment would be prejudicial to H&P, and any possible continuance would not cure such prejudice because it would also

8

prejudice Defendant Encana by further delaying this litigation. Plaintiff has failed to show good cause for the Court to grant leave to amend his complaint.

## II. Encana's Motion for Summary Judgment

### A. Legal Standard

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993). Once the movant carries its initial burden, the burden shifts to the non-movant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991).

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the non-movant, or, in other words, that the evidence favoring the non-movant is insufficient to enable a reasonable jury to return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the non-movant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

B. **Application**

Encana argues that Plaintiff is not an intended beneficiary of the "day work" contract between Encana and H&P; thus, it cannot be held liable for a breach of the "day work" contract. Encana further argues that Chapter 95 of the Texas Civil Practice & Remedies Code applies to and bars Plaintiff's common-law negligence claim because Encana did not have control over the manner in which Plaintiff's employer's work was performed and Encana had no actual knowledge of the danger that caused Plaintiff's injury.

1. **There is no genuine dispute of material fact that Plaintiff is not an intended beneficiary of the "day work" contract.**

Plaintiff alleges Encana breached the "day work" contract by failing to properly supervise H&P's employees and failing to stop drilling work after it knew the pipe wrangler—the alleged cause of Plaintiff's injuries—was not functioning properly and presented a danger to employees. Encana argues that Plaintiff cannot show that he and his employer were intended beneficiaries of the "day work" contract, and thus, Plaintiff cannot enforce the contract against Encana.

Under Texas law, to state a claim for breach of contract, a plaintiff must allege (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, LLC*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)).

There is a presumption against conferring third-party beneficiary status on a non-contracting party. *S. Texas Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007) (citing *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999)). The contracting

parties' intent controls whether a third party may enforce a given contract. *Id.* The intent to confer a direct benefit upon a third party "must be clearly and fully spelled out or enforcement by the third party must be denied." *Id.* (quoting *MCI Telecomms. Corp.*, 995 S.W.2d at 651). "Incidental benefits that may flow from a contract to a third party do not confer the right to enforce the contract." *Id.*

Plaintiff brings his breach of contract claim to attempt to enforce the "day work" contract. The contracting parties of the "day work" contract were originally Plains and H&P. Plains subsequently assigned its interest in the contract to Encana. Although Plaintiff quotes from the "day work" contract at length, he fails to present any evidence that he or his employer are intended beneficiaries of that contract. Further, Plaintiff presents no evidence that the contracting parties—Encana and H&P—clearly and fully spelled out their intent to confer a direct benefit upon Plaintiff or his employer in the "day work" contract.

Plaintiff's employer and Encana contracted under a separate agreement—the MSA—for Frank's to run the casing into the oil well. Plaintiff does not allege a breach of the MSA. Instead, Plaintiff argues that Encana breached the "day work" contract. The "day work" contract, however, never identifies Frank's as an intended beneficiary. The contract states that "the term 'Daywork' or 'Daywork Basis' means [H&P] shall furnish equipment, labor, and perform services as herein provided, for a specified sum per day under the direction, supervision and control of [Encana] (inclusive of any employee, agent, consultant or subcontractor engaged by [Encana] to direct drilling operations)." The provision only identifies Encana, H&P, and any other party engaged by Encana to direct drilling operations. But Plaintiff presents no evidence that his employer was engaged by Encana to direct drilling operations on the property. Plaintiff's employer was only engaged by Encana to provide casing well services under the separate MSA.

The "day work" contract also states that Encana "shall be solely responsible and assumes liability for all consequences of operations by both parties while on a Daywork Basis" other than those specifically assumed by H&P. But this language only indicates how Encana and H&P—the contracting parties—may hold each other liable under the terms of the "day work" contract. Plaintiff presents no evidence that indicates that he or his employer are intended beneficiaries of this contract, regardless of the liabilities that Encana and H&P each assumed with respect to one another.

The "day work" contract does contemplate a "casing program." This provision, found two pages after the aforementioned provision related to directing drilling operations, states that Encana "shall have the right to designate the points at which casing will be set and the manner of setting, cementing and testing" and that Encana "may modify the casing program, however, any such modification which material increases [H&P's] hazards or costs can only be made by mutual consent of [Encana] and [H&P] and upon agreement as to the additional compensation to be paid [H&P] as a result thereof." Docket no. 59-3 at 3. Although the "day work" contract contemplates certain aspects of the "casing program," it only does so with respect to Encana and H&P's responsibilities and rights with respect to that specific area of work. The provision does not clearly and fully spell out any intent to confer a direct benefit upon Plaintiff or his employer to allow them to enforce the "day work" contract.

Plaintiff argues that Encana had specific contractual responsibilities under the "day work" contract. Although this may be true, this fact alone does not confer a direct benefit upon Plaintiff to enforce the contract between Encana and H&P. Plaintiff may have other claims to allege against Encana, but for a breach of contract claim, at most, Plaintiff only presents evidence that he and his employer are incidental beneficiaries to the "day work" contract. There

is no genuine dispute of fact that Plaintiff cannot enforce the "day work" contract to hold Encana liable for breach of contract.

### 2. There is no genuine dispute of material fact that Chapter 95 applies to Plaintiff's negligence claim and that Encana had no "control" over Plaintiff's work.

Plaintiff alleges Encana had contractual control of all aspects of the drilling operation and was negligent when it failed to correct an obviously dangerous condition, properly supervise subcontractors, and shut down the drilling job after it became aware that the pipe wrangler was defective and highly dangerous. Encana argues that Chapter 95 of the Texas Civil Practice and Remedies Code applies to and bars Plaintiff's common-law negligence claim because Encana had no control over the manner in which Plaintiff's work was performed and had no actual knowledge of the danger that caused Plaintiff's injury.

Chapter 95 of the Texas Civil Practice and Remedies Code sets out the applicability and limitations on a property owner's liability for personal injury, death, or property damage to independent contractors. Chapter 95 only applies to a claim: "(1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and (2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement." TEX. CIV. PRAC. & REM. CODE § 95.002. Chapter 95 applies to "all negligence claims that arise from either a premises defect or the negligent activity of a property owner or its employees by virtue of the 'condition or use' language in section 95.002(2)." *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 50 (Tex. 2015). Chapter 95 goes on to set out the potential liability of such a property owner:

> A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who

> constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace unless:
>
> (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and
>
> (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

*Id.* § 95.003. If Chapter 95 applies to a negligence claim, Texas courts have found that it is the exclusive remedy for that claim. *See Arsement v. Spinnaker Expl. Co., LLC*, 400 F.3d 238, 247 (5th Cir. 2005).

### a. Chapter 95 applies to Plaintiff's negligence claim.

Encana argues that it is a property owner and that Plaintiff is an employee of a contractor. Under Chapter 95, a "property owner" is "a person or entity that owns real property primarily used for commercial or business purposes." TEX. CIV. PRAC. & REM. CODE § 95.001(3). "Well-settled law holds that a mineral lease conveys a fee simple determinable interest in real property," and the production and marketing of oil and gas is evidence of using the property for commercial or business purposes. *Francis v. Coastal Oil & Gas Corp.*, 130 S.W.3d 76, 84 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Encana provides evidence that it owned the mineral lease covering the property in question for the purpose of producing oil and gas. Docket nos. 59 at 11; 59-2 at 1. Plaintiff states he was an employee of Frank's, and Encana provides evidence that Frank's was hired as an independent contractor. Docket nos. 59 at 11; 59-5 at 6.

Frank's was hired by Encana to run the casing into the well on the property. Docket no. 59-2 at 2. Mineral wells are "improvements" to real property, as stated by Chapter 95, as a matter of law. *Petri v. Kestrel Oil & Gas Properties, L.P.*, 878 F. Supp. 2d 744, 771 (S.D. Tex. 2012).

Further, the "installation of casing is an integral part of the construction of a well." *Painter v. Momentum Energy Corp.*, 271 S.W.3d 388, 399 (Tex. App.—El Paso 2008, pet. denied). Thus, Frank's was a contractor that constructed or modified an improvement to real property under Chapter 95, and Plaintiff is an employee of Frank's who engaged in the same. Plaintiff does not dispute the applicability of Chapter 95 or present any contrary evidence. There is no genuine dispute of fact that Chapter 95 applies to Plaintiff's negligence claim.

### b. Encana had no "control" over the pipe wrangler.

Encana next argues that it did not retain or exercise "control" over the condition or activity that allegedly injured Plaintiff. To be held liable, the property owner must exercise control over the "mode or method" of the contractor's work, not merely the right to order the work to start or stop or to inspect progress or receive reports. TEX. CIV. PRAC. & REM. CODE § 95.003; *Arsement*, 400 F.3d at 249.

Encana argues it did not have contractual control over the pipe wrangler that was the source of Plaintiff's alleged injury, but rather that H&P did. Appendix E of the "day work" contract sets out certain responsibilities that H&P undertook, including providing its personnel with "proper and well-maintained equipment"; "ensuring that all operations are conducted in a safe manner, and for promptly correcting and reporting to [Encana] and to [H&P's] employees and subcontractors all known or suspected hazards or unsafe conditions"; instructing its personnel to "report any known or suspected hazards or unsafe conditions"; and "establishing corrective actions to ensure the development and implementation of identified deficiencies." Docket no. 59-3 at 19. Plaintiff also asserted that H&P assumed these safety-related responsibilities in his Amended Complaint. Docket no. 49 at 4. Now Plaintiff argues that the

15

"day work" contract actually demonstrates that Encana had contractual control over the details of the casing operation such that it may be held liable under Chapter 95.[1]

The "day work" contract, under the section entitled "Casing Program," states that Encana "shall have the right to designate the points at which casing will be set and the manner of setting, cementing and testing." Docket no. 59-3 at 3. Encana may modify the casing program, but any modification "which materially increases [H&P's] hazards or costs" requires mutual consent between Encana and H&P. *Id.* As Encana argues, the requisite control factor is "narrowly construed: the owner must control the 'mode or method' of the contractor's work." *Arsement*, 400 F.3d at 249. Although the contract gives Encana control over where the casing will be set and the manner of setting, cementing, and testing, it does not give Encana contractual control over the manner in which the pipe wrangler was operated. Nor does Plaintiff present evidence to show that Encana had contractual control over the equipment used, the safety of that equipment, or establishing any corrective actions. As Appendix E of the contract states, and as Plaintiff alleges, H&P maintained contractual control over these modes or methods of Plaintiff's work— the use and safety of the equipment used, including the pipe wrangler. Encana was only entitled to receive reports from H&P should H&P identify any safety issue with the equipment.

The right to control certain work "must extend to the operative detail of the contractor's work" and "must relate to the injury the negligence causes." *Ellwood Texas Forge Corp. v. Jones*, 214 S.W.3d 693, 700 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Plaintiff does not allege negligence due to the points at which the casing was set, or the manner of setting,

---

[1] Although Plaintiff argues that a property owner may be held liable if there is either actual control or contractual control, Plaintiff does not argue or present any evidence to suggest that Encana had actual control. Plaintiff only argues that Encana had contractual control over the pipe wrangler under the "day work" contract.

cementing and testing. Plaintiff alleges negligence due a safety defect in the pipe wrangler equipment and the failure of employees to report known or suspected hazards or unsafe conditions. Plaintiff alleges in his own live complaint that H&P had control over these modes and methods of Plaintiff's work. Encana and H&P specifically contracted that H&P would retain control over these aspects of the work.

Plaintiff presents no evidence that Encana had the type of contractual control required by Chapter 95 to impose liability. Accordingly, there is no genuine dispute of fact that Encana cannot be held liable under Chapter 95 for Plaintiff's injury allegedly caused by the pipe wrangler. The Court need not analyze if Encana had actual knowledge of the danger or condition that allegedly caused Plaintiff's injury.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration (docket no. 62) is DENIED, Plaintiff's Motion for Leave to Amend Plaintiff's First Amended Complaint (docket no. 63) is DENIED, and Defendant's Motion for Summary Judgment (docket no. 59) is GRANTED. Accordingly, Plaintiff's claims are DISMISSED WITH PREJUDICE. The Clerk is directed to issue a Judgment in favor of Defendant Encana, and that Plaintiff takes nothing on its claims. Defendant may submit its Bill of Costs within 14 days in the form directed by the Clerk should it desire to pursue these costs.

It is so ORDERED.

SIGNED this 1st day of March, 2018.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE